WILLIAMS SHOE COMPANY, Appellee, v. C. GOTZIAN & CO., Appellant, EDWARD M. MAYHEW, Defendant.

**Pleadings: AMENDMENT.** The court's discretion in permitting an
1  amendment offered upon the trial to conform the pleadings to the proof will not be interfered with on appeal, except upon a showing of prejudice.

**Oral agreements: STATUTE OF FRAUDS: EVIDENCE.** The agreement
2  of one creditor, in consideration for a transfer of the debtor's property to him, to pay the pro rate share of another creditor's claim, is a direct promise which is not within the statute of frauds.

Evidence held to show an agreement to pay a pro rate share of claims rather than to make a payment in full.

**Recovery of interest: COSTS.** Where one creditor agreed, upon the
3  transfer of a debtor's property to him, to pay other creditors their pro rate share of the proceeds, such other creditors, in the absence of a tender or offer to confess judgment, were entitled to interest on the amount due them from the time they signified a willingness to accept the same; and to costs of the action to recover the pro rate share.

**Composition with creditors: ACCEPTANCE: CONSIDERATION.** After a
4  debtor had conveyed his property to one creditor on condition that he pay other creditors their pro rate share of the proceeds, a creditor's subsequent agreement to accept a certain per cent., after all other creditors had been paid a like amount, was based on a composition and was supported by sufficient consideration.

*Appeal from Woodbury District Court.*— HON. JOHN F. OLIVER, Judge.

WEDNESDAY, JUNE 6, 1906.

SUIT in equity to recover of defendant Gotzian & Co. the amount due defendant for goods sold and delivered de

fendant Mayhew, and for an accounting of the proceeds of certain goods received from Mayhew by Gotzian & Co. Defendant Gotzian & Co. alone answered, and filed what was to all intents and purposes a general denial. The case was tried to the court, resulting in a judgment for part of plaintiff's claim. Both parties appeal; but, as Gotzian & Co. first served notice, it will be treated as appellant.— *Affirmed.*

*Shull & Farnsworth* and *Gilbert & Greenman,* for appellant.

*F. E. Gill,* for appellee.

Deemer, J.— Save for a ruling upon a motion to strike an amendment to the petition, filed after the evidence had been taken and after the arguments had been made, but before the decision of the trial court, there is no need of referring to the pleadings at length. Suffice it to say that in the original petition it was charged that Gotzian & Co. received from defendant Mayhew a certain stock of goods owned by him, in satisfaction of a claim held by it against him, and upon the further consideration that it would pay his outstanding indebtedness; that plaintiff was at that time one of Mayhew's creditors to the extent of $390; and that Gotzian & Co., although receiving the goods and their proceeds, failed to pay plaintiff's claim.

After the case had been argued, but before final submission, plaintiff amended its petition, ostensibly to meet the evidence in the case, in which it alleged that the agreement between Mayhew and Gotzian & Co. was that his (Mayhew's) creditors should either be paid in full, or that Gotzian & Co. undertook to pay these creditors their *pro rata* share out of the property received by them; that as a matter of fact Gotzian & Co. had paid all other creditors, save plaintiff, fifty cents on the dollar for their claims; and

that fifty per cent. was an equitable *pro rata* share of May-hew assets received by the said Gotzian & Co., not including certain other securities held by it. In this amendment plaintiff asked the court to determine what the contract was and to render judgment accordingly. Defendant and appellant moved to strike this amendment, because filed too late, and because it tendered a new issue and introduced a new cause of action to defendant's prejudice. This motion was overruled, and the trial court rendered judgment for plaintiff, on the theory that the promise was to pay its equitable proportion of the assets, or fifty per cent. of the amount of its claim. This judgment also included interest upon the amount awarded from December 17, 1903, the time when it is claimed appellant might have paid the claim.

This appeal presents the correctness of the ruling on the motion to strike the amendment, the competency and sufficiency of the evidence to support the judgment, and the

1. PLEADINGS: amendment.

action of the court in allowing interest on the claim. Plaintiff's appeal is bottomed upon the proposition that it should have had judgment for the full amount of its claim, with interest. Amendments to pleadings are allowed with great liberality in this state, and a large discretion is vested in trial courts in permitting them. Unless some prejudice results from the filing thereof, or some injustice appears, rulings with reference to such matters will not be disturbed in this court. The amendment in question did not introduce a new cause of action; but if it did, no possible prejudice resulted, for it was evidently to meet the testimony already adduced and to conform the pleadings to the proofs. Gotzian & Co., through their witnesses, went into the transaction between it and Mayhew fully, and testified as to every matter connected therewith. This it did under the issues as they originally stood, and the amendment pleaded matter which went to the amount, rather than to the right, of recovery.

The promise was direct, and not collateral, made to subserve some purpose of the promisor, and to pay out of or because of property conveyed to it by Mayhew. Such promises need not be in writing. *Pratt v. Fishwild,* 121 Iowa, 648; *French v. French,* 84 Iowa, 661.

2. ORAL AGREE-MENTS: statute of frauds: evidence.

The evidence shows that Mayhew was engaged in the retail boot and shoe business in the city of Sioux City during the years 1902 and 1903. Gotzian & Co. was in the year 1903, and for many years prior thereto, engaged in the wholesale boot and shoe business at St. Paul, Minn. Mayhew had been an employé of this firm for many years, and when he concluded to engage in business for himself he solicited Gotzian & Co. to give him a line of credit — credit to the amount of $2,500. This the firm promised to do, and at the same time it took a mortgage upon some Dakota land from Mayhew for the sum of $1,600. Mayhew commenced his business in the year 1902, and by the last of August of the year 1903 he had become indebted to Gotzian & Co. to an amount exceeding $6,900. He owed other creditors at this time, including plaintiff, something like $1,500. Discovering Mayhew's condition, Gotzian & Co. went to him and induced him to make it a bill of sale covering his entire stock, furniture, and fixtures; also all accounts and books of account pertaining to the business. This bill of sale was made on August 31, 1903, and was recorded the next day. Gotzian & Co. immediately took possession under its bill of sale, and proceeded to close out the stock of goods, and to collect the accounts. Mayhew had just purchased a bill of goods from plaintiff, part of which had been returned; but he testified without contradiction that about $390 worth of plaintiff's goods were covered by the bill of sale. Mayhew said on the witness stand that as a consideration for the bill of sale Gotzian & Co. agreed to pay all outside creditors and release all his indebtedness to them. This is denied by some of defendant's witnesses;

but it does appear that Gotzian & Co. paid all the outside creditors, save plaintiff, fifty cents on the dollar for their claims, and that it gave Mayhew a release of all his indebtedness to it. It has not satisfied the mortgage on the Dakota land, nor has it paid plaintiff anything, although at one time it offered to pay it fifty cents on the dollar for its claim, which plaintiff at that time refused to accept. It afterwards asked Gotzian & Co. to send it fifty per cent. thereof, which request was not complied with. The release to Mayhew was conditioned upon his not being adjudged a bankrupt within four months from the date of the release. While there is a statement in a letter written by Gotzian & Co. to the effect that it had invoiced Mayhew's stock and fixtures at $6,107 there is no competent evidence as to the value of the property received by appellant, save a statement from a witness, the president of Gotzian & Co., to the effect that after settling with all the creditors, save Williams Shoe Company, and disposing of the property, it had $122.72 more than fifty per cent. of the amount of its claim, not counting the $1,600 mortgage. This is the witness who said that his principal had offered the Williams Shoe Company fifty per cent. of its claim, the same as it had all other creditors. The arrangement with Mayhew was to save the expense incident to his going through bankruptcy, and the release given him is very significant.

The only point in serious dispute on the facts is the nature of the promise made to Mayhew with reference to plaintiff's claim. Mayhew says it was to pay it and all other outside creditors in full, or at least to secure the release of all their claims, although he afterward said that the agreement was that it was to settle with his outside creditors. It is evident that, whatever the arrangement, it was the purpose to keep Mayhew from going into bankruptcy, either voluntary or involuntary. The effect of his testimony was that Gotzian & Co. was to take the goods and settle with his (Mayhew's) other creditors, and thus keep

him out of bankruptcy. Defendant's evidence upon this point, aside from written admissions made by it in letters, was from one witness to the effect that it took the bill of sale with the understanding it would try to make settlement with his (Mayhew's) other creditors; that there was no understanding as to the amount they should pay, but that they would do the best they could to settle with these outside creditors; and that, if they succeeded in doing so, they would give him a release in full of all his indebtedness to them. Appellant also claims that it was to have the Dakota land. Another, and one of defendant's witnesses, testified that the agreement was that the defendant was to take the goods, inventory the same, and ascertain Mayhew's true condition, and then endeavor to get a settlement with his outside creditors on the basis of about what the estate would pay if equitably divided, and that, pursuant to promise, it made the invoice and offered these creditors fifty cents on the dollar, all of whom finally accepted save plaintiff. After rejecting the offer of fifty cents on the dollar, plaintiff finally agreed to accept it. We are satisfied from the evidence that Gotzian & Co. did not agree to pay plaintiff's claim in full. It wrote plaintiff, making the offer of fifty cents on the dollar, and was given to understand that this was more than could be obtained if Mayhew went into bankruptcy or otherwise, and that, if all outside creditors did not accept this offer, he (Mayhew) would be thrown or go into bankruptcy. This offer was at first rejected by plaintiff, but afterward, and before the time had expired wherein Mayhew might have been forced into bankruptcy, plaintiff agreed to accept the fifty per cent. and the thought of bankruptcy ended. This amount defendant then failed or neglected to pay, and this action was brought.

Appellant made no tender of the fifty per cent. and at no time offered to confess judgment for the amount. Under these facts the trial court was clearly right in rendering judgment for at least fifty per cent. of the claim. Plain-

tiff's offer to accept fifty per cent. was made December 12,

**3. RECOVERY OF INTEREST: costs.** 1903; and, as appellant did not pay it, plaintiff was entitled to interest thereon as allowed by the trial court. *Jones v. Mollinix,* 25 Iowa, 198; *Rand v. Wiley,* 70 Iowa, 110. As there was no tender or offer to confess, the costs were properly taxed to appellant. Rand v. Wiley, *supra.*

These conclusions virtually settle plaintiff's appeal. We do not think Gotzian & Co. agreed to pay Mayhew's outside creditors in full. It was a sort of composition agree-

**4. COMPOSITION WITH CREDITORS: acceptance: consideration.** ment, in which the firm agreed to take the goods and make settlement as best it could. It settled with all other creditors at fifty cents on the dollar, and so advised plaintiff, offering to pay it the same amount. This offer was at first rejected, but afterward accepted. Made at the time it was, and based, in part at least, upon the composition with other creditors, it had a sufficient consideration, and should be enforced. Page on Contracts, section 313, and cases cited. This is what the trial court did, and with its conclusion we are agreed.

The judgment is right, and it is *affirmed.*